
SLIP OPINION

# SUPREME COURT OF ARKANSAS

**Opinion Delivered** November 21, 2013

IN RE ADMINISTRATIVE PLANS
FOR CIRCUIT AND DISTRICT
COURTS

**PER CURIAM**

The requirement for the submission and approval of an administrative plan outlining the case assignments and other administrative practices of each of our judicial circuits was implemented in 2003. Pursuant to Administrative Order No. 14(4)(a), the plans are submitted biannually on July 1 to be reviewed and approved by this court and become effective the following January 1.

The requirement of the administrative plans has proved to be a successful method of insuring consistent docketing and case-management practices across the state has also provided access to information that is extremely helpful to the bar and to the public. Beginning this year, most of our state and local district courts are also required to submit administrative plans for approval. Today we announce the following action based on our review of circuit and district court administrative plans.

## CIRCUIT COURTS

As a result of amendments to Administrative Order No. 14, circuit court administrative plans were required, for the first time, to address two additional issues:

SLIP OPINION

1) If state district court judges are authorized to preside over circuit court matters pursuant Administrative Order No. 18, the circuit court administrative plan must include a description of the matters so authorized and the judges assigned to hear them. Administrative plans required for state and local district courts are also required to be appended to the circuit court administrative plan but are not a part of the circuit court plan. Administrative Order No. 14(3)(c)(3) and (4).

2) If the circuit court operates any special programs, dockets, or proceedings the administrative plan must include a description of the program, its funding and resources, its statutory authority, and a certification that it conforms to all applicable laws concerning sentencing. Administrative Order No. 14(3)(c)(2).

We have now completed our review of all the circuit court administrative plans, including their provisions on case assignments and allocations, caseload estimates, processes for recusal, and use of state district judges. As limited by our comments below about specialty court programs, all circuit court administrative plans are approved and shall be effective January 1, 2014.

<u>DISTRICT COURTS</u>

Recent amendments to Administrative Order No. 18 now require that state and local district courts submit an administrative plan for our review and approval if the court is served by multiple judges, is authorized to conduct its proceedings in multiple venues, or operates a specialty docket or program. Administrative Order No. 18(9) & (10). In response to these amendments, fifty-one administrative plans were submitted by state and local district court

SLIP OPINION

judges. We appreciate the efforts made in developing this initial set of administrative plans. They will be posted on the Arkansas Judiciary Website; the information will be extremely helpful to members of the bar and to the public.

It appears that the following district courts failed to submit a plan as required by Administrative Order No. 18: Cross County District Court, Phillips County District Court – Departments 1 and 2, West Fork District Court, Franklin County District Court – Ozark District, East Camden District Court, and Fulton County District Court. These courts should either submit a plan for approval or provide information to this court that a plan is not required pursuant to Administrative Order No. 18.

We have now completed our review of the district court administrative plans that were submitted. As limited by our comments below about special court programs, all district court plans are approved and shall be effective January 1, 2014.

## SPECIALITY DOCKETS AND PROGRAMS

Our revisions to Administrative Order No. 14 and 18 to require more detailed information about the operation of special programs or dockets by circuit and district court judges were initially prompted by published reports about the lack of financial accounting and legal authority in one such program. Further inquiry led to our discovery of a proliferation in the number and variety of programs–described as "courts"–which are operated by or adjacent to our circuit and district courts. In the administrative plans that we have just reviewed there are references to "Drug Courts," "Juvenile Drug Courts," "Fine Collection Court," "Mental Health Courts," "DWI Courts," "Veterans Treatment Courts," "Sobriety

Courts," "Swift Courts," "Family Treatment Drug Court," "Smart Court," "Domestic Violence Courts," "Teen Courts" and "HOPE Probation Court."

The materials and descriptions regarding these programs make clear that they were created in response to serious problems and needs within our communities and represent a shared attempt to coordinate information and resources from multiple local, state, federal and/or private agencies, centered upon court cases that are pending or filed in circuit or district courts. Many of the programs were created pursuant to federal legislation, operate pursuant to federal guidelines, and are supported by funding from a federal agency. In a few cases there is specific statutory authority that has been provided by the General Assembly, i.e., Drug Courts, Ark. Code Ann. §§ 16-98-301 et seq., Swift Courts, Ark. Code Ann. § 16-93-1701, Juvenile Drug Courts, Ark. Code Ann. § 16-13-323 and Teen Courts, Ark. Code Ann. § 16-13-326.

The success demonstrated by many of the programs is due to the exceptional leadership, skill, and dedication of circuit and district judges. These judges do not receive additional compensation for these additional duties. Nothing in our review of these matters should be seen as questioning the efforts or motives of those involved in the programs or minimizing the positive impact that the programs bring to our communities and our state.

There are, however, three primary concerns that our review of these programs has brought to our attention. The first might be viewed as one of semantics, but it raises the potential for more substantive and negative consequences. Most of the special programs and dockets that are in existence are specifically referred to as "courts," i.e., "Drug Courts,"

SLIP OPINION

"Mental Health Courts," etc. Amendment 80, section 1 of the Arkansas Constitution provides, "The judicial power is vested in the Judicial Department of state government, consisting of a Supreme Court and other courts established by this Constitution." The only other courts so created include the court of appeals (amendment 80, section 5), circuit courts (amendment 80, section 6), and district courts (amendment 80, section 6). While the description of specialty programs as "courts" may not create substantive legal issues, it, at a minimum, creates confusion for the public and for parties who interact with our court system.

As an additional matter, the resulting confusion creates an assumption and expectation on the part of the public that, if an institution is called a "court," it must mean that the court system is knowledgeable of and responsible for all aspects of the program. Unfortunately, this is not the case. As has been mentioned, many of these programs find their origin in federal legislation and federal agencies that have an interest in addressing or advancing a policy outcome for which the agency is responsible in matters that come before a state court. Local interest in the creation of a special "court" is prompted when federal grant funds are made available to communities that agree to create such a program consistent with federal guidelines. In many instances, these programs are created absent any involvement of this court or, in some cases, absent the knowledge or participation of other judges in the same circuit or district.

This lack of coordination and oversight has made it impossible for this court to carry outs its constitutional responsibility to "exercise general superintending control over all courts of the state." This concern was the basis for our decision to require that specialty dockets or

5

SLIP OPINION

programs be described in the administrative plans and approved by this court.

Finally, our review of administrative plans reveals that, in some instances, there is no specific statutory authority provided for the creation of specialty programs or for specific alternative procedures or sentencing outcomes that appear to be a part of such programs. There may be circumstances in which a court or the judicial branch possesses the authority, absent specific legislation, to create a program or procedure. By their nature, however, specialty programs or dockets bring together interbranch and interagency programs and activities and impact executive-branch agencies and local government programs and resources. For this reason, deferring to the action of the General Assembly to consider and authorize the creation of the programs as an initial step is appropriate.

In sum, we take the following action with respect to specialty programs and dockets:

1) Those specialty programs and dockets for which specific statutory authority for their creation currently exists are approved. With respect to our concern about the confusion created by the reference to such programs as "courts," we request that judges and others involved with the programs consider the issue and make recommendations for the revision of such descriptions in the future. We also respectfully request the General Assembly to consider the revision of current statutory language that includes references to specialty "courts."

2) Those specialty programs and dockets for which no specific statutory authority for their creation exists may temporarily continue, based on the descriptions of the programs found in the administrative plans submitted to the court. Action



should be taken, however, to request that the General Assembly consider legislation to specifically authorize such programs. Further action by this court will be deferred until that time.

3) Apart from general legislation that authorizes the creation of a program, some specialty-court programs provide for alternative processing of cases or, in some instances, the use of alternative sentencing outcomes or dispositions. Our review and approval of these programs do not in any way sanction the use of sentencing alternatives that are not specifically authorized by the General Assembly. As a part of the submission of administrative plans we require a certification that "the program conforms to all applicable sentencing laws, including fines, fees, court costs, and probation assessments." No program may be continued that utilizes sentencing options or the imposition of financial assessments or sanctions that have not been authorized by the General Assembly.